**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA  )** | |
| ) | **CRIMINAL ACTION FILE** |
| **v.                                          )** | |
| ) | **NO. 1:10-CR-167-JEC/AJB** |
| **RAMONE GARCIA SHIRLEY,    )** | |
| ) | |
| **Defendant.          )** | |

**ORDER FOR SERVICE OF**
**REPORT AND RECOMMENDATION**

Attached is the Report and Recommendation ("R&R") of the United States

Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and

N.D. Ga. CrR. 58.1(A)(3)(a), (b).  A copy of the R&R and this order shall be served

upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections to the

R&R within **fourteen (14)** days of service of this Order.  Should objections be filed,

they shall specify with particularity the alleged error(s) made (including reference by

page number to the transcript if applicable) and shall be served upon the opposing

party.  *See United States v. Gaddy*, 894 F.2d 1307, 1315 (11th Cir. 1990).  The party

filing objections will be responsible for obtaining and filing the transcript of any

evidentiary hearing for review by the District Court.  Failure to object in accordance with this rule waives a party's right to review.  FED. R. CRIM. P. 59(b)(2).

Pursuant to 18 U.S.C. § 3161(h)(1)(H), **the above-referenced fourteen (14) days allowed for filing objections is EXCLUDED from the computation of time under the Speedy Trial Act ("the Act"), whether or not objections are actually filed.**  If objections to this R&R are filed, the Clerk is **DIRECTED** to **EXCLUDE** from the computation of time all time between the filing of the R&R and the submission of the R&R, along with any objections, responses and replies thereto, to the District Judge.  18 U.S.C. § 3161(h)(1)(D), (H); *Henderson v. United States*, 476 U.S. 321, 331 (1986);  *United States v. Mers*, 701 F.2d 1321, 1337 (11th Cir. 1983).  The Clerk is **DIRECTED** to submit the R&R with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this   7th   day of   July  , 2011.

_____
**ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE**

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **CRIMINAL ACTION FILE** |
| **v.** | ) | |
| | ) | **NO. 1:10-CR-167-JEC/AJB** |
| **RAMONE GARCIA SHIRLEY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**UNITED STATES MAGISTRATE JUDGE'S**
**SECOND FINAL REPORT AND RECOMMENDATION**

Pending before the Court is Defendant Ramone Garcia Shirley's Motion *In Limine* #2 and Motion to Suppress.  [Doc. 44].  For the following reasons, the undersigned **RECOMMENDS** that the motion be **DENIED**.

*I.    Introduction*

An April 9, 2010, indictment charges Defendant Shirley with possession of a firearm by convicted felon, [Doc. 1], arising out of Shirley's arrest on January 30, 2009, by Atlanta Police officers and the discovery of a firearm in his automobile.[1]  In the pending motion, Shirley  moves to suppress a firearm, ammunition and his driver's

---

[1]      The facts of that seizure are discussed in a previous Report and Recommendation, [Doc. 32], in which the undersigned recommended that Shirley's motion to suppress, [Doc. 18], be denied.  The District Court adopted that recommendation.  [Doc. 39].

AO 72A
(Rev.8/8
2)

license that law enforcement officers seized while executing a search warrant at Shirley's residence in September 2006, evidence which the government seeks to admit pursuant to Federal Rule of Evidence 404(b).[2]  The government responded to Shirley's motion, [Doc. 50], and after being directed to do so, Shirley filed a reply.  [Doc. 57].  The motion is now ripe for a recommended resolution.

## II.    Facts

The evidence the government seeks to introduce was seized on September 19, 2006, at 5179 Barrington Trace Drive, Atlanta, Georgia 30331, pursuant to a Fulton County Superior Court search warrant.[3]

The application for the warrant was made on September 15, 2006, by Fulton County Police Detective Mike Hannan.  The supporting affidavit provided that, at the time of the application, Hannan had been a police officer for 13 years, a narcotics

---

[2]        The Fourth Amendment and the judicially-crafted exclusionary rule applies to evidence sought to be admitted under Fed. R. Evid. 404(b).  *See United States v. Renteria*, 625 F.2d 1279, 1282 (5th Cir. 1980) ("Unless barred by the Fourth Amendment challenge, th[e] [Rule 404(b)] evidence was properly admitted."); *United States v. Hill*, 60 F.3d 672, 679 & n.4 (10th Cir. 1995) (citing cases); *United States v. Hill*, 898 F.2d 72, 74 (7th Cir. 1990); *United States v. Ozuna*, 129 F. Supp. 2d 1345, 1350-52 (S.D. Fla. 2001).

[3]        Also seized were 31.9 grams of cocaine, a kilogram press, documents, jewelry and a Mercedes Benz automobile.  [Doc. 50-3 at 5-6].

detective for 6 years, and a member of the High Intensity Drug Trafficking Area (HIDTA) Task Force for a little over 4 years.  He had written and/or executed over 100 search warrants in drug investigations, and had arrested over 300 individuals for violation of federal or state drug laws.  *See* Search Warrant Affidavit contained in Doc. 50 [Doc. 50-1 at 7].

Hannan's affidavit continued that based on his training, experience and participation in other financial investigations involving large amounts of cocaine and other drugs, he knew, among other things, that large-scale narcotics dealers

(1) often purchase and/or title their assets in fictitious names, aliases or in third parties' names to avoid government detection but continue to use and exercise dominion and control over those assets;

(2) must keep on hand large amounts of U.S. currency to maintain and finance their on-going narcotics operations;

(3) commonly maintain books, records, ledgers, and other documents concerning their narcotics distribution business, and that these documents are maintained where the traffickers have ready access to these documents;

3

(4) commonly conceal in their residences contraband, drug proceeds and records for ready access to them and to conceal said items from law enforcement, including the use of "stash" places within their residences or businesses;

(5) in order to maintain concealment, frequently build "stash" places within their residences or businesses;

(6) commonly maintain in their residences and businesses evidence pertaining to obtaining, secreting, transferring, concealing and spending drug proceeds including valuables and records;

(7) often use electronic equipment such as computers, currency counting machines and telephone answering machines to generate, transfer, count, record and store information about their transactions;

(8) attempt to launder illegal proceeds into legitimate activities which themselves generate large quantities of currency;

* * * *

(9) maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization

4

AO 72A
(Rev.8/8
2)

(10)  have in their possession on their persons, residences or places of

business firearms to protect their property.

[Doc. 50-1 at 5-6].

Hannan next averred that in April 2006, a confidential informant (CS#1) reported

to the DEA that Shirley was an Atlanta multi-kilogram cocaine trafficker who had used

a residence on Commercial Avenue in Atlanta as a stash and distribution house for his

cocaine activities.  CS#1 also reported that Shirley drove a black 2007 Mercedes sedan

and a silver 2005 Infiniti QX56 SUV, and stated that Shirley was in the market to

purchase a new primary residence in the $700,000 price range as well as various

investment properties.  [Doc. 50-1 at 8].

The affidavit further related that also in April 2006, another informant (CS#2)

informed Hannan that Shirley was a multi-ounce cocaine trafficker in the Atlanta area.

CS#2 stated that he/she could purchase cocaine from Shirley and attempt to introduce

an undercover law enforcement officer to him.  Thereafter, the affidavit continued, on

May 3, 2006, CS#2 made a controlled undercover purchase from Shirley at

2210 Sylvan Road in Atlanta, receiving 123.5 grams of cocaine from him in exchange

for $2400 in official government funds.  CS#2 made another purchase from Shirley on

May 17, 2006, at 586 Commercial Drive, receiving 246.9 grams of cocaine in exchange

5

for $4800 in official government funds.  On June 22, 2006, CS#2 purchased 490.1 grams of cocaine from Shirley at 586 Commercial Avenue in exchange for $9500 in official government funds.  [*Id.* at 8].

Hannan also averred that property records disclosed that on June 9, 2006, Shirley purchased a residence at 5179 Barrington Trace Drive in Atlanta on June 9, 2006, for $509,900.  Phone and power records obtained September 13 and15, 2006, respectively showed Shirley as the listed subscriber for phone and power service at that residence.  [*Id.* at 8-9].

Hannan further stated that Shirley's Georgia parole officer told the DEA on September 13, 2006, that Shirley was arrested n September 6, 2006, for leaving the state without permission of the parole board, and also stated that Shirley had failed to provide proof of legitimate employment for at least a 6 month period.  [*Id.* at 9].

The search warrant authorized the search of

5179 Barrington Trace Drive, Atlanta (Fulton County), Georgia 30331.
The location is further described as a three level single family residence, tan brick with being trim.
The numbers "5179" are clearly posted on the mailbox in front of the house.
Any detached buildings or structures located on the property;
Any vehicles located on the property.

6

[Doc. 50-1 at 1]. The warrant authorized the search for and seizure of, among other things, records and other papers related to the transportation, ordering, purchasing and distribution of controlled substances; indicia of occupancy; and firearms and ammunition. [*Id.* at 3].

### III.   *Contentions of the parties*

In his initial motion, Shirley argued without detail that the affidavit upon which the warrant was issued was insufficient on its face, did not contain sufficient probable cause, contained information intended to mislead the issuing magistrate into believing probable cause exited, contained stale information and did not adequately describe the premises to be search. [Doc. 44 at 2].

In response, the government contended that the warrant was facially valid. [Doc. 50 at 10-11]. It also argued that the residence to be searched was adequately identified because it sought to search 5179 Barrington Trace Drive and described the location, and validly identified the specific items to be searched for and seized. [Doc. 50 at 11, 22].

The government also argued that the warrant was adequately supported by timely probable cause. First, it explained that the affidavit demonstrated that Shirley distributed cocaine on at least three occasions, two from a location reported to be his

residence.  Second, an informant stated that Shirley was in the market to purchase another residence in the $700,000 range at the same time he did not show proof of legitimate income to his parole officer for a period of 6 months, and in June 2006, he purchased the subject property for $509,900.  The government argued that combined with these facts, Hannan's inclusion in his affidavit that in his training and experience drug traffickers store contraband and firearms in their residences demonstrated a fair probability that Shirley was storing contraband and firearms at his new residence. It also contended that the information underlying probable cause was timely because the drug sales occurred less than 3 months before the search warrant.  [*Id.* at 17-19].

The government also submitted that Shirley's motion inadequately supported his contention that the affidavit contained false information.  [Doc. 20-21].

Finally, the government argued that even if probable cause was lacking, suppression of the evidence was not warranted due to the good faith exception to the exclusionary rule.  [*Id.* at 22-24].

In his reply ordered by the Court, Shirley raised six distinct arguments.  First, he argued that probable cause was lacking because there was no information that the

8

confidential informants were reliable.[4]   As to CS#1, he argued that there was no information that established that informant's basis of knowledge that Shirley dealt in multi-kilo levels of cocaine, used an address on Commercial Avenue to further his cocaine sales business, drove a Mercedes or Infiniti SUV or wanted to buy a $700,000 house or investment property.  He asserted that the type of automobiles Shirley drove were easily verifiable but law enforcement did not explain whether that information was verified, nor did the affidavit detail how law enforcement came to view CS#1 as reliable.  [Doc. 57 at 5-6]

Shirley also argued that the affidavit similarly was lacking as to CS#2, in that it failed to disclose how CS#2 knew that Shirley was a multi-ounce cocaine dealer or even how CS#2 knew Shirley.  It also was silent as to any rewards or inducements but showed that in the State case arising out of this search, Shirley learned that CS#2 was paid $1400 after each transaction.  [*Id.* at 6].

Further, he contended that the confidential informants provided no information about 5179 Barrington Drive or how they knew that Shirley lived there, and in any

------

[4]      Shirley argued that he was not present at the searched location when the warrant as executed since he was in custody and was never charged in either state or federal court with possession of the firearm.  [Doc. 57 at 2].  Neither contention is relevant to whether probable cause existed to issue the search warrant.

9

event did not contain any information that Shirley conducted any drug activity at Barrington Trace Drive. [*Id.* at 7-9].[5] He argued that there was no specific information or facts which would support the conclusion that either contraband or firearms would be found in the residence, and that there was no nexus between any unlawful activity and the residence. [*Id.* at 8].

Shirley next pointed out that the affidavit failed to allege that the Commercial Avenue location was his residence, only that he used it as a stash house. He therefore claimed that the government's argument in its brief that he sold cocaine out of one of "his residences" is incorrect. [Doc. 57 at 10]. In this regard, he further argued that the affidavit did not verify whether he owned any residences on Commercial Avenue, "[t]hus, it is disingenuous for the government to argue that the affidavit supplied probable cause for a warrant to search the residence at 5179 Barrington Trace Drive

---

[5]     He also argued that there is no indication that the substances allegedly purchased from Shirley by CS#2 were in fact cocaine. [Doc. 57 at 7]. He does not state any authority in support, and the Court is not aware of any, that concludes that a search warrant application that does not state that the substance obtained from the suspect tested positive lacks probable cause. In any event, the Court rejects the argument. First, the affidavit identified the substances sold by Shirley as cocaine, and Shirley makes no argument or supplies any evidence to refute this claim. Second, the price paid by CS#2 for the substance, averaging approximately $555.00 per ounce, is consistent with the wholesale price of cocaine reported in other cases. *United States v. Johnson*, No. 1:05-CR-001-SPM, 2006 WL 230129, *3 (N.D. Fla. Jan. 31, 2006) ($700 per ounce).

AO 72A
(Rev.8/8
2)

because an unknown individual claimed that Shirley used (not owned) another residence on Commer[ci]al Avenue as a stash house where drugs were allegedly sold several months previous." [*Id.* (emphasis deleted)].

Shirley then argued that the affidavit omitted that CS#1 told law enforcement that Shirley had a residence at 661 Tomahawk Place in Austell, Georgia and used 586 Commercial Avenue as a stash house and distribution point for cocaine trafficking. [*Id.* at 10-11 (citing Doc. 50-3 at 3)]. He therefore contended, that since he had another primary residence (Tomahawk Place) in April 2006 that he did not use as a stash/distribution house, it is unlikely that he would use his new residence at Barrington Trace Drive for illegal activities. [*Id.* at 11]. In addition, Shirley contended that there was no evidence in the affidavit that he was looking for a new stash house or evidence that he engaged in illegal activity since June 22. Therefore, he concluded, there is no nexus between the Barrington Trace Drive residence and illegal activity.

Shirley further complained that the affidavit took "another giant leap" by claiming that because he had not provided proof of legitimate income for 6 months and purchased a new home for $509,900, that he was engaging in drug trafficking when there are many more reasonable and innocent explanations than the assumption that he was drug trafficking, such as what financing he obtained, equity in his prior home or

other residences, gifts, etc.  He also stated that this home was purchased at a time when home buyers "were easily placed into mortgages they could not afford."  [*Id.* at 12].

Next, Shirley argued that there were no facts in the affidavit that Shirley possessed firearms at the residence or that he used firearms in his criminal activity.  [*Id.*].

Second, Shirley argued that the information in the warrant application was stale since the information as to any criminal conduct was at least 3 months old.  [*Id.* at 13-14].

Third, Shirley argued that the affidavit contained material omissions and misleading information rendering it unsupported by probable cause.  He alleged that in the Superior Court case which resulted from the executed warrant, the State disclosed that CS#2 was paid after each transaction, totaling $1400.  He contended that this information needed to be disclosed in the affidavit particularly where there was no indication that CS#2 was reliable.  He also argued that the issuing judge should have been told that Shirley had been in jail since September 13, 2006, and therefore could not have been committing crimes at the Barrington Trace Drive residence.  He also argued that the fact that Shirley was in custody severed Shirley's connection to the residence.  He also argued that the issuing judge should have been told that he owned

12

a house in Austell as to which there were no allegations that he used it as a drug storage or distribution site, thus making it unlikely that he would have used the Barrington Trace Drive residence as a drug storage or distribution location.  [*Id.* at 15].

Fourth, Shirley argued that the warrant was not particularized and was overly broad in that it did not offer specific instructions as to what was to be seized.  He contended that the list on non-specific items unlawfully authorized the officers to seize at their discretion items for which there was no reason for their seizure.  [*Id.* at 16-17].  He also complained that there was no limitation on the scope of the search, including the search for and of electronic media such as computers and jump drives.  [*Id.* at 18].  Thus, he submitted, the warrant was an unlawful, general exploratory warrant.  [*Id.* 19-20].

Fifth, Shirley contended that the *Leon* good faith exception to the exclusionary rule was not applicable in this case because it was a "bare-boned" affidavit that was so facially deficient that no reasonable officer could have relied upon it.  [*Id.* at 22-23].  He also argued that the good faith exception does not apply where, as he alleges here, the warrant contains false statements or omissions.  [*Id.* at 23-24].

Finally, Shirley argued that the evidence was not admissible under Federal Rules of Evidence 403 and 404(b).  [Doc. 57 at 25-28].

13

The parties' filings raise the following issues:

1.    Whether the search warrant was supported by probable cause?  Included within this issue are the following challenges raised by Shirley:

    a.    whether the informants were reliable?

    b.    whether the information contained in the affidavit was stale?

    c.    whether there was a sufficient nexus between Shirley's criminal activity and the property to be searched?

    d.    whether there was probable cause to search for weapons and ammunition apart from probable cause to search for evidence of narcotics dealing?

2.    Whether the warrant properly described the premises to be searched and particularized the items to be searched for and seized?

3.    Whether the warrant is invalidated by knowingly false or misleading statements or statements made in reckless disregard for the truth?

4.    Whether, in the event no probable cause existed, the evidence nonetheless should not be suppressed due to the good faith exception to the exclusionary rule?

5.    Whether the evidence should not be admitted under Federal Rules of Criminal Procedure 403 and 404(b)?

14

AO 72A
(Rev.8/8
2)

IV.     *Discussion*

    A.     *Probable Cause*

        1.     *Relevant Law*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV.    Thus, "[t]he Amendment protects persons against unreasonable searches of "their persons [and] houses." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).  The Fourth Amendment further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution.  *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002).

Search warrants are presumed to be validly issued.  *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  The burden of establishing that the warrant in this case was defective or executed improperly is upon the defendant. *Id.*; *United States v. Van Horn*, 789 F.2d 1492, 1500 (11th Cir. 1986);  *United States v. Marx*, 635 F.2d 436, 441 (5th Cir. Unit B 1981); *United States v. Osborne*, 630 F.2d 374, 377 (5th Cir. 1980).

15

The task of the issuing judge in determining whether to issue a warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Jiminez*, 242 F.3d 1243, 1248 (11th Cir. 2000). In other words, probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location. *See United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009).

"[P]robable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts[.]" *Gates*, 462 U.S. at 232. Thus, the determination of probable cause based on an affidavit "does not lend itself to a prescribed set of rules," but instead uses a "flexible, common-sense standard." *Id.* at 240; *see also United States v. McCraven*, 401 F.3d 693 (6th Cir. 2005) (noting that "while an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form."). The evidence presented in support of

16

a search need not be sufficient to support a conviction. *Brinegar v. United States*, 338 U.S. 160, 175 (1949).

An informant's tip may establish probable cause to issue a search warrant. *See United States v. Betancourt*, 734 F.2d 750, 755 (11th Cir. 1984). To avoid "rigid" legal rules in evaluating an informant's tip, the Supreme Court changed the "two-pronged test" of *Aguilar v. Texas,* 378 U.S. 108, 114 (1964), into a totality of the circumstances test. *See Gates*, 462 U.S. at 230-35. Under the *Gates* totality of the circumstances test, the "veracity" and "basis of knowledge" prongs of *Aguilar,* for assessing the usefulness of an informant's tips, are not independent. "[T]hey are better understood as relevant considerations in the totality of the circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for . . . by a strong showing as to the other[.]" *Gates*, 462 U.S. at 233. That is, "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (citing *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000)).

"Where a warrant to search a residence is sought, the affidavit must supply the authorizing magistrate with a reasonable basis for concluding that Defendant might

AO 72A
(Rev.8/8
2)

keep evidence of his crimes at his home, i.e., a 'safe yet accessible place.' "
*Kapordelis*, 569 F.3d at 1310 (quoting *United States v. Feliz*, 182 F.3d 82, 87-88
(1st Cir. 1999)).  Therefore, the affidavit should establish (1) a connection between the
defendant and the residence to be searched; and (2) a link between the residence and
the criminal activity.  *Id.*

The Eleventh Circuit has stated that with regard to a suspect's home:

> The justification for allowing a search of a person's
> residence when that person is suspected of criminal activity
> is the common-sense realization that one tends to conceal
> fruits and instrumentalities of a crime in a place to which
> easy access may be had and in which privacy is nevertheless
> maintained.  In normal situations, few places are more
> convenient than one's residence for use in planning criminal
> activities and hiding fruits of a crime.

*United States v. Green*, 634 F.2d 222, 226 (5th Cir. Unit B Jan.1981).
There need not be an allegation that the illegal activity occurred at the
location to be searched, for example the home, but "the affidavit should
establish a connection between the defendant and the residence to be
searched and a link between the residence and any criminal activity."
*United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002); *see United
States v. Anton*, 546 F.3d 1355, 1358 (11th Cir. 2008) (evidence of
possession of contraband of type normally expected to be hidden in
residence will support search); *United States v. Jenkins*, 901 F.2d 1075,
1080-81 (11th Cir. 1990) (nexus between items to be seized and
defendant's home can be established circumstantially where contraband
is capable of being hidden in residence).  *But see Green*, 634 F.2d at 226
(convenience of defendant's residence "for use as a place to plan and hide
fruits of the crime [was] thus diminished, if not eliminated" where alleged

18

obstruction of justice, suborning of perjury, and violations of citizen's civil rights took place thousands of miles from home in absence of other evidence linking residence and the criminal activity).

*Kapordelis*, 569 F.3d at 1310; *see also United States v. Tate*, 586 F.3d 936, 942-43 (11th Cir. 2009) (holding that "the nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation") (quoting *Jenkins*, 901 F.2d at 1080-81).

The task of a reviewing court in examining a challenge to a search warrant is different than that of an issuing judge considering whether to issue the warrant. In determining whether a search warrant is supported by probable cause, a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the judge's decision to issue the warrant. *Massachusetts v. Upton,* 466 U.S. 727, 728 (1984); *United States v. Miller*, 24 F.3d 1357, 1363 (11th Cir. 1994) ("[R]eviewing courts lend substantial deference to an issuing magistrate's probable cause determinations."). When affidavits are attached to a warrant, courts consider the affiant's statements as well as the search warrant. *See United States v. Martinelli*, 454 F.3d 1300, 1308 (11th Cir. 2006). In reviewing the probable cause determination, supporting affidavits should not be interpreted in a hypertechnical manner; rather, a realistic and commonsense approach

19

should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations.   *See Gates*, 462 U.S. at 236-37 (1983) (citing *United States v. Ventresca*, 380 U.S. 102, 109 (1965)); *Miller*, 24 F.3d at 1361.   When it is difficult to determine whether a search warrant affidavit supports probable cause, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."   *Upton*, 466 U.S. at 734 (quoting *Ventresca*, 380 U.S. at 109).

> 2.   *Analysis*

Considering the totality of the circumstances in this case, the affidavit provided the issuing judge with sufficient probable cause to believe that contraband or evidence of Shirley's narcotics trafficking would be found at Shirley's recently purchased residence.   First, the affidavit clearly established probable cause that Shirley was engaged in narcotics trafficking.   He sold trafficking amounts of cocaine on three occasions to CS#2 over a short period time.   In addition, during this same period of time, Shirley did not have verifiable lawful employment, and yet he purchased a residence valued at over a half a million dollars and drove expensive automobiles.   *See United States v. Butler*, 102 F.3d 1191, 1198 (11th Cir. 1997) (concluding that totality

of circumstances, including analysis of defendant's finances showing a large amount of unexplained wealth, amounted to probable cause to issue search warrant); *see also United States v. Edwards*, 885 F.2d 377, 390 (7th Cir. 1989) (stating in a forfeiture case that "where a defendant's verifiable income cannot possibly account for the level of wealth displayed and where there is strong evidence that the defendant is a drug trafficker, then there is probable cause to believe that the wealth is either a direct product of the illicit activity or that it is traceable to the activity as proceeds").

Contrary to Shirley's arguments, there was a substantial basis for the issuing judge to find the information provided by the informants reliable. First, CS#1's information that Shirley was a cocaine dealer who utilized a residence on Commercial Avenue in his cocaine-trafficking activities was corroborated by CS#2's purchase of cocaine from Shirley on two occasions at that location. *Cf. United States v. Hooshmand*, 931 F.2d 725, 735 (11th Cir. 1991) (rejecting claim that informants were unreliable where informants corroborated each other); *United States v. Rodriguez*, 765 F.2d 1546, 1555 (11th Cir. 1985) (same). Also, CS#1's information that Shirley was looking to purchase a new residence in the $700,000 range was corroborated by law enforcement's discovery that less than 2 months after CS#1 reported this information, Shirley in fact purchased the subject property for $509,900. *See United*

21

*States v. Weinrich*, 586 F.2d 481, 489 (5th Cir. 1978) (concluding that less detailed information from a reliable source may be used as grounds for a finding of probable cause if independent investigation by law enforcement agencies yields sufficient verification or corroboration of the informant's report to make it "apparent that the informant had not been fabricating his report out of whole cloth"); *see also United States v. Angulo-Lopez*, 791 F.2d 1394, 1397 (9th Cir. 1986) (holding that informant's reliability may be demonstrated through independent police corroboration of information provided). As a result, the issuing judge could find that CS#1's information, including Shirley's ownership of expensive vehicles, was reliable because various aspects of CS#1's information were corroborated. Although the affidavit did not reflect that CS#1's information that Shirley owned expensive automobiles was itself corroborated by independent police investigation, independent police corroboration of a confidential source's information, *per se*, is not required. *See United States v. Brundidge*, 170 F.3d 1350, 1353 (11th Cir. 1999). Finally, the Court does not conclude that CS#1's information that Shirley was a multi-kilogram cocaine trafficker was so off the mark to be considered unreliable, when in a short period of time, CS#2's purchases ramped up to almost half a kilogram.

22

CS#2 also was a reliable informant.  CS#2 engineered three undercover multi-ounce purchases of cocaine.  *Cf. United States v. Hall*, 203 Fed. Appx. 965, 966 (11th Cir. Oct. 24, 2006) (CI reliable where he had conducted 3 undercover buys).

Next, the Court rejects Shirley's claim that the information contained in the application was stale.  To satisfy the probable cause standard, the government "must reveal facts that make it likely that the items being sought are in that place when the warrant issues."  *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994); *United States v. Domme*, 753 F.2d 950, 953 (11th Cir. 1985).  Thus, for probable cause to exist, the information supporting of the government's application for a search warrant must be timely when the search warrant is issued.  *Sgro v. United States*, 287 U.S. 206, 210 (1932) ("[I]t is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time."); *Domme*, 753 F.2d at 953; *United States v. Bascaro*, 742 F.2d 1335, 1345 (11th Cir. 1984).  Warrant applications based upon stale information generally fail to establish probable cause that similar or other improper conduct is continuing.  *Harris*, 20 F.3d at 450; *Bascaro*, 742 F.2d at 1345.

The Eleventh Circuit has framed the issue when staleness claims are made, as follows:

23

When reviewing staleness challenges we do not apply some talismanic rule which establishes arbitrary time limitations for presenting information to a magistrate, rather, we review each case based on the unique facts presented. *Bascaro*, 742 F.2d at 1345; *Domme*, 753 F.2d at 953; *Sgro*, 287 U.S. at 210. In this case-by-case determination we may consider the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched. *See United States v. Hooshmand*, 931 F.2d 725, 735-36 (11th Cir. 1991); *Bascaro*, 742 F.2d at 1345; *Cauchon v. United States*, 824 F.2d 908, 911 (11th Cir. 1987); *United States v. Pless*, 982 F.2d 1118, 1126 (7th Cir. 1992); *United States v. Bucuvalas*, 970 F.2d 937, 940 (1st Cir. 1992); and *United States v. Rugh*, 968 F.2d 750, 754 (8th Cir. 1992). Ultimately, however, even stale information is not fatal if the government affidavit updates, substantiates, or corroborates the stale material. *See Bascaro*, 742 F.2d at 1346 (additional circumstantial evidence coupled with defendant's preexisting involvement with conspiracy supported probable cause determination). *See also Bucuvalas*, 970 F.2d at 940.

*Harris*, *id*. Thus, "[i]n general, the basic criterion as to the duration of probable cause is the inherent nature of the crime." *United States v. Haimowitz*, 706 F.2d 1549, 1555 (11th Cir. 1983) (internal quotation marks and citation omitted). "[W]here an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." *Bascaro*, 742 F.2d at 1345-46 (quoting *Bastida v. Henderson*, 487 F.2d 860, 864 (5th Cir. 1973)); *see also United States v. Bervaldi*, 226 F.3d 1256, 1265

24

(11th Cir. 2000) (quoting *Domme*, 753 F.2d at 953) ("When criminal activity is protracted and continuous, it is more likely that the passage of time will not dissipate probable cause.").

In this case, Shirley engaged in multiple-ounce sales of cocaine with CS#2 on three occasions over a 6 week period of time, the last sale occurring less than 3 months before the search warrant application.  The affidavit recounts that he exhibited unexplained wealth since he reported no verifiable lawful employment.  Therefore, Shirley's criminal activity may be considered protracted and continuous rather than isolated.  In other cases of continuous as opposed to isolated criminal activity, the Eleventh Circuit has found information in search warrant applications of even lengthier delays not to be stale based upon the particular facts and circumstances of those cases. *Bervaldi*, 226 F.3d at 1264-67 (narcotics; 6 months); *Domme*, 753 F.2d at 953-55 (narcotics; 9 months); *Hooshmand*, 931 F.2d at 735-36 (Medicaid fraud; 11 months); *Harris*, 20 F.3d at 450-51 (narcotics; 2 years).  As a result, the Court concludes that the information in the warrant application in this case was not stale.

The final issue with regard to whether probable cause existed concerns whether there was an appropriate nexus between Shirley's drug dealing and the Barrington Trace Drive residence in order to authorize the search warrant for his residence.  In this

25

case, Detective Hannan, an experienced narcotics investigator, advised that in his training and experience, drug traffickers commonly maintain evidence, tools and fruits of their enterprises in their residences. Evidence that the defendant is in possession of contraband or evidence that is of the type that would normally expect to be hidden at their residence will support a search. *United States v. Anton*, 546 F.3d 1355, 1358 (11th Cir. 2008) (citing *Jenkins*, 901 F.2d at 1080); *see also United States v. Bradley*, --- F.3d ----, ----, 2011 WL 2565480, *28 (11th Cir. June 29, 2011) ("We have previously found that a police officer's expectation, based on prior experience and the specific circumstances of the alleged crime, that evidence is likely to be found in a suspect's residence satisfies probable cause" and citing *Jenkins*, 901 F.2d at 1080-81).

The fact situation in *Anton* is similar to the present case. In *Anton*, federal agents observed Anton with firearms at several gun shows. A confidential informant also indicated that Anton would attend a specific gun show and had claimed to be in possession of over 300 firearms. The affidavit further noted that based upon the federal agent's experience, convicted felons and firearms dealers possessing contraband typically store these items on their property. Although there was no direct information that Anton stored firearms at his residence, the Eleventh Circuit held that "[b]ased on these statements and the fact that Anton's trailer was observed at multiple gun shows,

26

the totality of the evidence provided probable cause to support the search of Anton's residence."

In this case, like *Anton*, there is no direct evidence in the affidavit describing any narcotics dealing or storage of narcotics at the Barrington Trace Drive residence. On the other hand, unlike *Anton*, there are the additional facts tying evidence of Shirley's narcotics trafficking to his Barrington Trace Drive residence. First, there is Shirley's unexplained wealth, which the issuing judge reasonably could conclude came from Shirley's cocaine trafficking. Given this fact, in light of Hannan's statements in the affidavit concerning narcotics traffickers' common maintenance of financial and drug trafficking records and evidence in their residences, the Barrington Trace Drive residence likely contained evidence and records of Shirley's narcotics trafficking and unexplained wealth.

Second, the issuing judge was aware that Shirley had recently been arrested by his parole officer for leaving the state without permission. This arrest authorized the issuing judge to infer that (1) Shirley was currently on parole for another criminal conviction; (2) as a parolee who apparently was still engaged in criminal activity, Shirley likely would conceal evidence of new criminal conduct (i.e., cocaine trafficking) in a place he deemed secure and safe, such as his residence; and (3) Shirley

27

likely was not expecting to be arrested on a parole violation and therefore was unlikely to have disposed of evidence secreted at his house related to his continued criminal conduct. Contrary to Shirley's argument, the critical issue is not whether he was incapable of committing crimes while he was in custody; rather the issue is whether there was probable cause to believe that the Barrington Trace Drive residence contained evidence relating to Shirley's cocaine distribution enterprise. The Court concludes there was and that, therefore, there was a sufficient nexus between Shirley's criminal conduct and the residence.

Other cases support this conclusion. In *United States v. Meryl*, 322 Fed. Appx. 871 (11th Cir. Apr. 9, 2009) (*per curiam*), the Eleventh Circuit applied this reasoning to a search warrant for the residence of a suspected drug dealer. In that case, contrary to the defendant's argument that the affidavit failed to provide a link between the evidence being sought and his residence, the court found that the affidavit "established a fair probability that evidence of drug activity or drugs would be found at Meryl's residence." *Id.* at 874. The *Meryl* Court based this decision in part on the references in the affidavit to Meryl using his residence before and after the drug deals, while recognizing that his residence changed between drug deals, and to Meryl's possession of drugs, suggesting his involvement in ongoing drug dealing. The *Meryl* Court also

28

relied on the reasonable inferences from the evidence in concluding that probable cause existed. Specifically, the Eleventh Circuit found the evidence that Meryl did not have any other base of operations except his residence, "[c]ombined with the district court's common-sense finding that 'drug dealers are likely to keep evidence of their drug business at home,' " supported the district court's probable cause findings. *Id.* (citing *Butler*, 102 F.3d at 1198; *Jenkins*, 901 F.2d at 1080–81); *see also United States v. Maestas*, 546 F.2d 1177, 1180 (5th Cir. 1977) (holding that "firsthand evidence in the affidavit that materials subject to seizure were in the premises where the officers proposed to conduct their search . . . is not always necessary. For instance, evidence that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence.").

Moreover, numerous other Circuits have found generalized opinion evidence sufficient to find probable cause warranting a search of a residence.[6] *See, e.g., United*

---

[6]     Shirley argues that *United States v. Lalor*, 996 F.2d 1578, 1582-83 (4th Cir. 1993), is helpful to his argument because there, the Fourth Circuit found no link between the crime (drug trafficking) and the residence. However, in *Lalor*, the conclusion was based on the lack of evidence that narcotics and proceeds would be stored at the residence and the lack of evidence of the geographic relationship between the location of the drug sale and the residence. As discussed in the text, there were links between Shirley's drug dealing, the accumulation of unexplained wealth and the Barrington Trace Drive residence, and Shirley lived and distributed cocaine in Atlanta. As a result, the undersigned finds *Lalor* to be distinguishable.

States v. Orozco, 576 F.3d 745, 750 (7th Cir. 2009) (finding that an investigator's opinion that "evidence of drug trafficking and gang activity 'will be found' in [the defendant's] home" was sufficient to establish probable cause, and distinguishing United States v. Schultz, 14 F.3d 1093, 1097-98 (6th Cir.1994)); United States v. Feliz, 182 F.3d 82, 87-88 (1st Cir. 1999) (probable cause was established by relying on an affiant's "experience in drug trafficking cases and his opinions regarding the habits of drug traffickers" when the affidavit also established that defendant was a drug trafficker); United States v. Robinson, 275 F.3d 371, 378 (4th Cir. 2001) (search warrant was valid where evidence consisted of affiant's statement that "in his experience many perpetrators of criminal acts do not dispose of the clothing worn during the crime"). The Tenth Circuit also has emphasized that "magistrate judges may 'rely on the opinion' of law enforcement officers" in issuing search warrants.  United States v. Biglow, 562 F.3d 1272, 1279 (10th Cir. 2009) (quoting United States v. Hargus, 128 F.3d 1358, 1362 (10th Cir. 1997)).  But see United States v. Schultz, 14 F.3d 1093, 1097 (6th Cir. 1994) ("[A]n officer's training and experience . . . cannot substitute for the lack of evidentiary nexus").[7]

---

[7]     The Court has grave doubts that the broad language in Schultz is applicable or instructive in this case.  In Schultz, two search warrants were issued, one for the defendant's home and one for a safety deposit box the defendant maintained at a

AO 72A
(Rev.8/8
2)

Therefore, a sufficient nexus has been demonstrated between Shirley's narcotics trafficking and his residence.  The undersigned also adds that even if reviewing courts might see the existence of probable cause to be closer question than does the undersigned, the suppression motion should still be denied, at least on this ground, because "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."  *Upton*, 466 U.S. at 734 (quoting *Ventresca*, 380 U.S. at 109).  As a result, the undersigned concludes that the

---

financial institution.  *Schultz*, 14 F.3d at 1096.  The Sixth Circuit determined that there was sufficient probable cause for a search warrant of the defendant's home to issue because there was evidence to establish both that the defendant was selling narcotics and that there might be evidence of that activity at the defendant's home.  *Id.* at 1097. But, it also found that there was no evidence tying the defendant's purported drug activities to the safety deposit box.  *Id.* at 1097-98.  A police officer learned of the box while conducting a credit check of the defendant; thus, the officer had little more than a hunch that contraband or evidence of a crime would be found in the box.  *Id.* at 1096-98.  For that reason, the court decided that the search warrant for the safety deposit box should not have issued. Id. at 1098.  After deciding *Schultz*, the Sixth Circuit has recognized that in order for a search to be justified, "the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.' "  *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004).  In other words, a nexus must exist between the place searched and the evidence sought.  *Id.*  However, the court has held that a finding of a nexus does not require the affidavit to allege that the criminal activity took place at the location to be searched.  *United States v. Khami*, 362 Fed. Appx. 501, 504 (6th Cir. Jan. 26, 2010) (citing *United States v. Jones*, 159 F.3d 969, 974-75 (6th Cir. 1998)).  *Carpenter*, *Khami* and *Jones* support the undersigned's conclusion in this case.

31

evidence uncovered during the execution of the search warrant should not be suppressed.

Shirley made a related argument that there was no probable cause to search for and seize firearms and ammunition since there was no evidence that Shirley carried or used a firearm in any drug deal.  [Doc. 57 at 12].  However, for the same reasons that probable cause existed to search Shirley's residence for evidence of narcotics trafficking, Hannan's affidavit, which provided that firearms were commonly possessed by drug traffickers, established probable cause to believe that firearms were present in the residence.   *See United States v. Richard*, 350 Fed. Appx. 252, 259 (10th Cir. Oct. 21, 2009) (where agent expressed his professional opinion, based upon extensive experience, that individuals involved in drug activity like defendant typically maintain evidence of and/or tools of their illegal activity in their residence, including firearms, drugs, and drug components, sufficient nexus established); *United States v. Kia*, 170 Fed. Appx. 457, 461 (9th Cir. Mar. 7, 2006) (holding that affiant's "statement that, based on his training and experience, drug dealers frequently have firearms to protect themselves from being 'ripped off' by drug customers or other drug dealers established a sufficient nexus between narcotics trafficking and [defendant's] possession of weapons" and thus defendant's argument that warrant was overly broad

32

in that it authorized a search for firearms and ammunition which were not sufficiently linked to drug trafficking was rejected).

In any event, the Eleventh Circuit has recognized that "[f]irearms are known 'tools of the trade' of narcotics dealing because of the dangers inherent in that line of work." *United States v. Thomas*, 242 F.3d 1028 1032 n.5 (11th Cir. 2001) (citation omitted). Even assuming there was no independent probable cause for searching for and seizing firearms and ammunition, since firearms are known "tools of the trade" of the drug business, *United States v. Smith*, 918 F.2d 1501, 1508-09 (11th Cir. 1991) (citing cases), any firearms or ammunition in the residence were therefore subject to seizure as evidence or contraband. *Id.* at 1509 (citing *Arizona v. Hicks*, 480 U.S. 321 (1987)).

Therefore, the Court rejects Shirley's probable cause challenge to the search warrant.

B.     *Particularity*

Shirley next argued that the warrant did not adequately describe the place to be searched, was overly broad and failed to particularize the items to be searched for and seized. The particularity clause of the Fourth Amendment requires warrants to "*particularly describe[e]* the place to be searched, and the persons or *things to be*

33

*seized*." (emphasis added). "This requirement is aimed at preventing 'general, exploratory rummaging in a person's belongings.' " *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad and the resulting general search is unconstitutional. *Stanford v. Texas*, 379 U.S. 476, 512 (1965). In order to deter such warrants and searches, any evidence so seized must be excluded from the trial of the defendant. *Stone v. Powell,* 428 U.S. 465, 486 (1976); *United States v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000).

To the extent that Shirley did not abandon his argument regarding the particularity of the place to be searched by not adequately addressing it in his supplemental brief, the Court finds this argument to be without merit. The Supreme Court has stated that in evaluating the description of the place to be searched, "it is enough if the description is such that the officer with a search warrant can, with reasonable effort[,] ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925). This does not, however, require the warrant's description of the place to be searched "to meet technical requirements or have the specificity sought by conveyancers." *United States v. Goodlow*, 389 Fed. Appx. 961, 971

34

(11th Cir. July 29, 2010) (quoting *United States v. Ellis*, 971 F.2d 701, 703 (11th Cir. 1992)). Rather, "[t]he warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority." *United States v. Burke*, 784 F.2d 1090, 1093 (11th Cir. 1986); *see also Ellis*, 971 F.2d at 703. The residence to be searched (Shirley's) was identified by its exact street address and by a physical description of the residence itself. Such description was sufficiently particular so that the officers with the search warrant could, with reasonable effort, ascertain and identify the place intended.

As to the items to be searched for and seized, a description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things to be seized. *United States v. Santarelli*, 778 F.2d 609, 614 (11th Cir. 1985); *Wuagneux*, 683 F.2d at 1349; *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. Unit A 1981). A search warrant must indeed be sufficiently precise as not to permit a general search, but the test is the reasonableness of the description. Elaborate specificity is unnecessary. *See United States v. Strauss*, 678 F.2d 886, 892 (11th Cir. 1982); *Osborne*, 630 F.2d at 378. Stated another way, the test is whether the search was a general exploration or specifically directed to the means and instrumentalities by

35

which the crime charged had been committed. *Harris v. United States*, 331 U.S. 145, 153-4 (1947). "The particularity requirement allows a practical margin of flexibility, depending on the type of property to be seized, and 'a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit.' " *United States v. Aguirre*, 368 Fed. Appx. 979, 987 (11th Cir. Mar. 18, 2010) (quoting *Wuagneux*, 683 F.2d at 1349).

In this case, the warrant properly described the evidence to be searched for and seized given the nature of the crime under investigation and the type of evidence being sought. In addition to narcotics, the warrant authorized the executing officers to search for documents which would corroborate the affiant's belief that Shirley's apparent unexplained wealth was due to drug dealing. It sought documentation which would reflect the magnitude of Shirley's "illicit drug distribution network [which also would] identify co-conspirators as well as assets accrued by S[hirley] as a result of his drug distribution network," since Hannan averred that drug traffickers commonly maintain in their residence documents and other evidence which identify associates. [Doc. 50-1 at 6, 9]. Thus, the warrant was sufficiently particularized so as to not be a general exploratory warrant. In any event, Shirley's particularity argument addresses only one aspect of the warrant - - computer and other electronic items - - and even if the warrant

36

was overly broad in describing those items, Shirley's firearm, ammunition and driver's license would not be subject to suppression. *Cook*, 657 F.2d at 735 & n.5 (holding that only those items that were not described with requisite particularity in warrant should be suppressed, but suppression of all of the fruits of the search is not required).

As a result, the Court rejects Shirley's inadequate description and particularity claims.

### C.     *False or misleading statements in affidavit*

A search warrant must be voided and the fruits of the search excluded if the affidavit supporting the search warrant contains a false statement made knowingly and intentionally or with reckless disregard for the truth. *Franks*, 438 U.S. at 155-56. In *Franks*, the Supreme Court held that where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a search warrant affidavit, and if the allegedly false statement was necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request to determine admissibility of the fruits of the search. *Id.* at 171-72; *United States v. Aisenberg*, 358 F.3d 1327, 1333 (11th Cir. 2004). *Franks* also applies when the "misinformation" involves omissions from the affidavit " 'made intentionally or with a reckless disregard

37

for the accuracy of the affidavit.' " *Madiwale v. Savaaiko*, 117 F.3d 1321, 1326-27 (11th Cir. 1997) (quoting *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980)). However, "[o]missions that are not reckless, but are instead negligent . . . or insignificant and immaterial, will not invalidate a warrant. . . . Indeed, even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Id.* at 1327 (citations omitted).

Thus, a warrant is valid "when material that is the subject of the alleged falsity or reckless disregard is set to one side, [and] there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Franks*, 438 U.S. at 171-72. Thus, a defendant must show (1) "that the alleged misrepresentations or omissions were knowingly or recklessly made" and (2) "that the result of excluding the alleged misrepresentations and including the alleged omissions would have been a lack of probable cause for issuance of the warrants." *United States v. Novaton*, 271 F.3d 968, 986-87 (11th Cir. 2001).

Shirley has not made the requisite showings under *Franks* because the facts he claims should have been presented to the issuing judge would not have altered the probable cause equation in this case. First, courts have held that a warrant does not violate *Franks* when the affidavit used to procure the warrant omitted the fact that an

38

informant was paid for his cooperation.  *United States v. Williams*, 477 F.3d 554, 558 (8th Cir. 2007); *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1991).  Therefore, even if the issuing judge had been told that CS#2 was paid after securing cocaine from Shirley, probable cause still existed.

Second, the Court concludes that *Franks* is not implicated by the fact that the affidavit did not disclose that Shirley was in jail at the time of the application.  He does not explain how his in-custody status detracts from the conclusion that evidence relating to his cocaine trafficking was likely stored at this residence.  As stated above in section 2, the fact that Shirley was in custody makes it more likely that evidence or contraband still would be located at his residence.

Third, the fact that Hannan did not disclose in his affidavit that Shirley had another home in Austell simply is not material to a finding of probable cause.  The affidavit demonstrated that Shirley told CS#1 in April 2006 that he was looking or a new home to buy in the $700,000 range, and investigators determined that he purchased the subject home in June 2006, and established telephone and power service in his name at the new address.  These facts demonstrate that Shirley likely used the Barrington Trace Drive as his residence, and whether or not it was his exclusive

residence, the affidavit established probable cause that he likely stored or maintained evidence of his cocaine dealing at that location.

As a result, the Court rejects Shirley's *Franks* arguments.

### D.     *Good faith*

The Court has concluded that probable cause existed to issue the warrant in this case.  As a result, the Court need not address the government's arguments that suppression of the evidence is not mandated by the good faith exception to the exclusionary rule.  In the event the District Court concludes that the undersigned's probable cause analysis is incorrect, however, the Court discusses the good faith exception.

The Supreme Court has established a "good faith" exception to the exclusionary rule to prevent suppression of the items found pursuant to a search warrant.  Under *United States v. Leon*, 468 U.S. 897, 913 (1984), the "good faith" exception to the rule requiring the suppression of evidence for violations of the Fourth Amendment keeps evidence from being suppressed when law enforcement officers obtain evidence through objective good faith reliance on a facially valid warrant that is later found to lack probable cause.  *See United States v. Gonzalez*,  969 F.2d 999, 1004 n.4 (11th Cir. 1992).  Nevertheless, "it is clear that in some circumstances the officer will have no

AO 72A
(Rev.8/8
2)

reasonable grounds for believing that the warrant was properly issued." *Leon*, 468 U.S. at 922-23.  *Leon*'s good faith exception does not apply to the following situations: (1) where the magistrate in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient - - *i.e.,* in failing to particularize the place to be searched or the things to be seized - - that the executing officers cannot reasonably presume it to be valid.  *United States v. Robinson*,  336 F.3d 1293, 1296 (11th Cir. 2003).  Thus, under *Leon*'s third exception, the affidavit must not be a "bare-bones" statement containing nothing more than conclusory allegations.  *See Leon*, 468 U.S. at 915; *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998).

The Court already has rejected Shirley's contentions that the affidavit contained misstatements and omissions, and therefore the good faith exception is not rendered inapplicable on that ground.  In addition, the warrant was not facially deficient in its description of the place to be searched or the items to be seized.

41

Finally, the Court finds that even if the affidavit was lacking in probable cause, it was not so lacking in probable cause as to render official belief in its existence entirely unreasonable. *Robinson*, 336 F.3d at 1296. As noted above, there was ample probable cause that Shirley was distributing cocaine, and that there was probable cause that the Barrington Trace Drive residence, apart from containing evidence of his cocaine trafficking, was itself evidence of his accumulation of assets through cocaine sales.

Therefore, if the District Court were to find that the undersigned's probable cause analysis is incorrect, the undersigned nonetheless **RECOMMENDS** that the evidence not be suppressed because the good faith exception to the exclusionary rule applies.

E.     *FED. R. EVID. 403 and 404(b)*

The Eleventh Circuit has observed that Rule 404(b) is a rule of inclusion, and that accordingly " '404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case.' " *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003) (quoting *United States v. Perez-Tosta*, 36 F.3d 1552, 1562 (11th Cir.1994)). In order to be admitted, extrinsic act evidence under Rule 404(b) must satisfy three prerequisites:

AO 72A
(Rev.8/8
2)

>   First, the evidence must be relevant to an issue other than the defendant's character.   Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act.   Third, the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

*Jernigan*, *id.* (quoting *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992) (en banc) (footnote and internal citations omitted)).  These requirements are met in this case.

First, the Barrington Trace Drive firearm and ammunition are relevant to his knowing possession of the firearm with which he is charged in this case.  As the *Jernigan* Court observed:

>   the caselaw in this and other circuits establishes clearly the logical connection between a convicted felon's knowing possession of a firearm at one time and his knowledge that a firearm is present at a subsequent time (or, put differently, that his possession at the subsequent time is not mistaken or accidental).

*Jernigan*, 341 F.3d at 1281 (citations omitted). While it is true that in *Jernigan*, the 404(b) evidence and the charged evidence involved the defendant's possession of a firearm in a motor vehicle, while in the present case the 404(b) possession was in a residence while the charged offense arose out of a traffic stop, that fact does not render the prior act not relevant to the issue of Shirley's knowledge.  For example, in *United*

43

*States v. Gomez*, 927 F.2d 1530, 1534 (11th Cir. 1991), the court held that evidence of the defendant prior concealed possession of a firearm was relevant where he was on trial for possessing a firearm in an automobile.  As in *Gomez*, the government must prove that Shirley knowingly possessed the firearm in 2006 and knowing possessed the firearm seized from his vehicle in January 2009.  "Once it is determined that the extrinsic offense requires the same intent as the charged offense and that the jury could find that the defendant committed the extrinsic offense, the evidence satisfies the first step under Rule 404(b)."  *United States v. Beechum*, 582 F.2d 898, 913 (5th Cir. 1978) (en banc) .

Second, there is sufficient proof so that a jury could find that the defendant committed the extrinsic act.  The firearm and ammunition were found in Shirley's home in a master bedroom dresser drawer adjacent to a drawer containing his driver's license.  [Doc. 50-2 at 1]. It is not a prerequisite to admissibility that Shirley was charged or convicted of the extrinsic act.  *United States v. Boon San Chong*, 829 F.2d 1572, 1575-76 (11th Cir. 1987).

Finally, the third requirement requires the Court to determine whether "the probative value of the evidence must not be substantially outweighed by unfair prejudice. . . . [T]his determination lies within the sound discretion of the district judge

44

and calls for a 'common sense assessment of all the circumstances surrounding the extrinsic offense,' including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *Jernigan*, 341 F.3d at 1282 (quoting *United States v. Calderon*, 127 F.3d 1314, 1332 (11th Cir. 1997), and *Beechum*, 582 F.2d at 914–15)) (emphasis omitted). While prosecutorial need is best left to the District Court, who will consider prosecutorial need while hearing the government present its case-in-chief, the other factors favor admissibility. Again, the two incidents are not rendered dissimilar because the earlier offense occurred in Shirley's home while the charged offense occurred in the automobile he was operating. Also, the time span between the two events, about 2 ½ years, is not temporally remote. *Calderon*, 127 F.3d at 1332 (holding that a six year span between the prior offense and the charged conduct did not render the previous conviction too remote to be relevant to the defendant's intent in the case then at bar); *see also United States v. Pollock*, 926 F.2d 1044, 1047–49 (11th Cir. 1991) (concluding that a prior conviction that was more than five years old was not too remote to be probative).

To the extent that evidence of the prior act evidence might be prejudicial to Shirley, the District Court can mitigate the prejudice by giving a cautionary instruction to the jury on the limited use of such evidence both when the evidence is introduced

45

and again at the close of trial.  *See United States v. Hernandez*, 896 F.2d 513, 523 (11th Cir. 1990).

Therefore, the evidence is admissible under Rule 404(b).

The District Court must also determine whether the evidence is excludable under Rule 403.  That rule provides that

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403.

Of course, the undersigned is not privy to the manner in which the government intends to introduce the extrinsic act at Shirley's trial.  Nonetheless, assuming the District Court gives an appropriate limiting instruction upon request and the searching officer testifies that the firearm and ammunition were discovered in the dresser drawer of Shirley's master bedroom and in close proximity to Shirley's driver's license, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, nor would such evidence cause undue delay, waste time or be a needless presentation of cumulative evidence.

46

As a result, the undersigned **RECOMMENDS** that Shirley's Rule 404(b) and 403 objections be overruled.

*Conclusion*

The undersigned **RECOMMENDS** that Defendant Ramone Garcia Shirley's Motion *In Limine* #2 and Motion to Suppress, [Doc. 44], be **DENIED**.  Having ruled on all pretrial matters referred to me, the case is again **CERTIFIED READY FOR TRIAL**.

**IT IS SO RECOMMENDED AND CERTIFIED**, this the   7th   day of July, 2011.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

47